IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LARRY JOE MORGAN, | § | |
| TDCJ No. 1847262, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL NO. 4:16-CV-139-Y |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner Larry Joe Morgan was convicted by a Texas State Court of aggravated assault with a deadly weapon and sentenced to 20 years. His petition should be denied and dismissed with prejudice as the claims within lack merit.

## JURISDICTION

Morgan seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and the parties as Morgan was convicted within this Court's jurisdiction.

## PETITIONER'S ALLEGATIONS

The Director understands Morgan to allege the following claims in his original petition and memo (Original Claims):

1. Ineffective assistance of trial counsel for failing to argue self-defense;

2. Ineffective assistance of trial counsel for denying him the right to confront the victim with his changing stories;

   3.     Ineffective assistance of trial counsel for failing to investigate and call witnesses:
        a.     A 911 caller;
        b.     Mr. James;
        c.     Mrs. Green; and
        d.     Eyewitnesses on the original police report.

   4.     Ineffective assistance of counsel because counsel suppressed evidence:
        a.     A favorable 911 caller that Morgan heard at trial;
        b.     A picture that proves self-defense which Morgan saw at trial;
        c.     DNA testing was never performed on the sheet-rock knife;
        d.     The crime scene photos prove that they were staged; and
        e.     "911 callers of the events being conceal."

ECF 1, at 6-7; ECF 4, at 1-3.

The Director understand Morgan to allege the following claims in his supplemental petition and memo (Supp. Claims):

   1.     His constitutional rights were violated by:
        a.     Evidence tampering;
        b.     Prosecutorial misconduct;
        c.     Mishandling of physical evidence;
        d.     Prosecutorial vindictiveness;
        e.     Court overreach;
        f.     Aggravated perjury;
        g.     Conspiracy;
        h.     Collusion; and
        i.     The trial judge was romantically involved with an assistant prosecutor that was removed from the case for a conflict.

   2.     His constitutional rights were violated because:
        a.     The state conducted findings of fact and conclusions of law in error and the court adopted them in error during his state habeas proceeding;
        b.     There are still unresolved facts not addressed on state habeas; and
        c.     "The court forced petitioner to continue with trial counsels' he told them was untrustworthy."

3.      Ineffective assistance of counsel for:
    a.      Failing to investigate;
    b.      Failing to request DNA testing;
    c.      Failing to determine if DNA testing had been done at the scene of the crime;
    d.      Failing to argue self-defense;
    e.      Failing to subpoena eyewitnesses on the original police report;
    f.      Failing to recognize the elements of self-defense;
    g.      Failing to subpoena the arresting officer;
    h.      Failing to inform him that he would not argue self-defense;
    i.      Failing to tell him that if he did not testify self-defense would be off the table;
    j.      Failing to understand the rudimentary elements that allow for conviction;
    k.      Failing to subpoena a witness whose version was different than that of the State;
    l.      Failing to impeach three imposters that took the stand as State's witnesses;
    m.      Failing to review the 911 calls;
    n.      Failing to deliver the file to the appellate attorney; and
    o.      Failing to transcribe the 911 calls played at trial.

ECF 18, at 7-8, 10-12; ECF 19, at 1-10.

However, Morgan's claims are difficult to decipher. Should the Court disagree with the Director's understanding of the claims, the Director reserves the right to argue the affirmative defenses as they apply to claims identified by the Court.

## GENERAL DENIAL

The Director denies all of Morgan's assertions of fact except those supported by the record or specifically admitted herein. The Director objects to all future, substantive motions filed by Morgan, and will respond to such motions only if ordered by the Court.

3

## STATEMENT OF THE CASE

### I.   Procedural History

The Director has lawful custody of Morgan pursuant to the judgment and sentence of the 396th District Court of Tarrant County, Texas, in cause number 1249395D, styled *The State of Texas v. Larry Joe Morgan*. SHCR-02, at 134-37.[1] Morgan pled not guilty to aggravated assault with a deadly weapon, was found guilty, and was sentenced to 20 years on March 22, 2013. *Id.*

Morgan appealed and his conviction was affirmed by Seventh Court of Appeals of Texas on June 4, 2014. *Morgan v. State*, No. 07–13–00136–CR, slip op. (Tex. App.–Amarillo, 2014, pet. ref'd). Morgan filed a Petition for Discretionary Review and it was refused on September 17, 2014. *Morgan v. State*, PDR No. 843-14 (Tex. Crim. App. 2014).

Morgan filed a state application for writ of habeas corpus challenging his conviction, and it was denied without written order, on the findings of the trial court without a hearing, on November 11, 2015. SHCR-02, at Action Taken. Morgan filed the instant federal writ petition on February 16, 2016. ECF 1, at 10. With the Court's permission, Morgan filed a supplemental petition on May 6, 2016. ECF 18, at 9.

### II.   Statement of the Facts

Morgan's attorney on appeal summarized the facts:

On August 4, 2011, a group of people gathered in Cobb Park in Fort Worth, Texas. They were visiting with one another, playing dominos and drinking beer. Included in their number were Michael Conner, the complainant, and Larry Joe Morgan, the

---

[1]    SHCR-02 refers to the written pleadings contained within *Ex parte Morgan*, No. 83,621-02.

4

appellant. Conner was seated in a chair he brought to the park along with a cooler of beer. In addition to drinking beer, Conner was selling beer to those who wished to buy from him.

Morgan had also come to the park to relax and drink beer. He met a childhood friend known to the people in the park as Joker. According to Joker, whose true name was Anthony Moore, there was an argument between Morgan and Conner over beer. During the course of the evening the argument continued until a fight erupted between Morgan and Conner. Conner suffered two major wounds, one to his forearm and a more serious wound to his ankle. His ankle was cut so badly that the foot disarticulated from the leg bone and was hanging from the end of his leg by the tendons and soft tissues.

Conner testified that Morgan demanded $5.00 back from him that Conner did not owe him. Morgan left in his truck, but then returned. According to Conner, he was still sitting in his chair when Morgan approached him angrily and began pulling something from his pocket. Conner, who was considerably larger than Morgan, fearing that Morgan was going for a weapon, grabbed him in a bear hug. Morgan slipped out of the bear hug and began cutting Conner with a knife. After being cut at least twice, Conner tried to run from Morgan but discovered that his ankle had been slashed so badly that he was hobbling on the end of his tibia with his foot dragging.

Morgan pursued him until other people at the park intervened. Conner's girlfriend, Terri Carrol, saw the fight, although somewhat differently. She said that Morgan approached Conner as he was sitting in his chair with his legs crossed. Morgan began slashing at Conner and that is when she believes the severe injury to Conner's ankle took place. She said she saw Morgan cut Conner several times, on the ankle, the arm and the back of the head.

The bystanders said that Morgan pursued Conner until several of them intervened, including Herschel Sadler, who pulled his own knife and confronted Morgan. While they were exchanging cuts and parries, a third bystander, Loring Mitchell, hit Morgan in the back of the head with a folding chair knocking him to the ground.

According to Mitchell, he and other bystanders kept Morgan on the ground until the police arrived.

Conner was loaded into the back of Herschel Sadler's pickup and driven out of the park to a nearby fire station where an ambulance was waiting for police backup. Some of the bystanders - it is unclear who - told the EMT, Ruben Cisneros, that the wound to Conner's ankle had come from a machete. He passed this information on to a nurse at the hospital to which he took Conner. None of the witnesses who testified, reported seeing a machete at the scene and none was found.

Conner has since undergone several surgeries and still has limitations in the use of his ankle.

Morgan told a substantially different story, although he did so at the punishment phase, having elected not to testify at the guilt stage. He said that he had given beer to Conner to sell. The money he was demanding was the agreed compensation for the beer that Conner sold. When he asked for his money, Conner attacked him, beating him with his fists, and when Morgan fell to the ground, stomping him. Morgan said he pulled his utility knife and began slashing at Conner in self-defense. He believes that it was in one of the attempts to stomp him that Conner's ankle was severely cut against his blade. He said when Conner realized how badly he was cut, he ran from Morgan, who in turn ran in the opposite direction. Morgan says he was then attacked by unidentified bystanders who knocked him to the ground and stabbed him. He says he lost consciousness for at least 4 hours. Morgan had a head injury and superficial stab wounds. Although, there were numerous variances in the accounts of the witnesses about the fight, none of their accounts resembled Morgan's. In broad outline they matched Conner's account.

The defense called Dr. Walworth Burge, the radiologist who was part of the team of physicians who treated Michael Conner, and introduced into evidence Conner's medical records from the incident. In the medical history, it relates that Conner reported that he was barbecuing and was attacked by a man wielding a machete. Dr. Burge thought it very unlikely that the injury to Conner's ankle could have been caused by a utility knife, the knife

6

recovered at the scene and alleged to be the weapon wielded by Morgan. He thought the injury was much more likely inflicted with a heavier implement, like a machete.

After Dr. Burge testified, the defense rested without putting on any additional evidence. Morgan took the stand and affirmed that he understood that whether to testify was his choice and his choice alone. He said he trusted his lawyer and was going to follow his advice not to testify. After he was found guilty, he testified at the punishment stage, placing his account of the incident before the court and saying that he had wanted to tell his story because he had acted in self-defense. He admitted that his weapon was his sheet rock knife, also identified as the utility knife found at the scene. He said there was no machete in the fight.

Appellant's Brief at 3-9 (citations omitted).

## RULE 5 STATEMENT

Because of the multifarious nature of Morgan's claims, the Director reserves the exhaustion and procedural default defense.[2] The Director believes that the petition is neither barred by limitations, 28 U.S.C. § 2244(d), nor subject to the successive petition bar, 28 U.S.C. § 2244(b).

## RECORDS

Morgan's state court records have been submitted to the Court.

## ANSWER WITH BRIEF IN SUPPORT

### I.   Standard of Review

Under 28 U.S.C. § 2254(d), a federal court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the relevant constitutional claim by the state court, (1) "'was

---

[2] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. 2254(b)(2).

contrary to' federal law then clearly established in the holdings of" the Supreme Court; or (2) "'involved an unreasonable application of'" clearly established Supreme Court precedent; or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting *(Terry) Williams v. Taylor,* 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d). The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *Williams*, 529 U.S. at 405–06.

A "run-of-the-mill" state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *Williams*, 529 U.S. at 406. To this end, a state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. And as the Supreme Court recently described this relitigation bar, in order to determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . *could have supported*, the state court's decision; and then it must ask *whether it is possible fairminded jurists could disagree that those arguments* or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S. Ct. at 786 (emphasis added). Indeed, this is the "only question that matters under § 2254(d)(1)." *Id.*

8

Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Richter,* 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti,* 537 U.S. 19, 27 (2002) (federal habeas relief is only merited where the state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). Moreover, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Alvarado,* 541 U.S. at 664. This is particularly true when reviewing a state court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), which when analyzed in conjunction with § 2254(d), creates a difficult to surmount, "doubly" deferential assumption in favor of the state court denial. *Richter,* 131 S. Ct. at 786.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter,* 131 S. Ct. at 786.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility fairminded jurists could disagree* that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a "guard against *extreme malfunctions* in the state criminal justice systems," *not a substitute for ordinary error correction through appeal*.

*Id.* (emphasis added) (internal citations omitted).

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *Santellan v. Cockrell,* 271 F.3d 190, 193 (5th Cir. 2001); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (". . . we review only the state court's decision, not its reasoning or written opinion . . . ."). Indeed, state courts are presumed to know and follow the law. *Visciotti*, 537 U.S. at 24. And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's relitigation bar nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Richter*, 131 S. Ct. at 786.

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *Williams*, 529 U.S. at 381. Stated differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there *was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Richter*, 131 S. Ct. at 786–87 (emphasis added). And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of the Supreme Court "before it can apply to the facts at hand . . ." because such a process suggests the proposed rule is not clearly established. *Alvarado,* 541 U.S. at 666.

AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001).

And except for the narrow exceptions contained in § 2254(e)(2), the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court. Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner. 28 U.S.C. § 2254(d)(2).

An evidentiary hearing is precluded unless (1) a petitioner's claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) the petitioner establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *Williams v. Taylor*, 529 U.S. 420, 436 (2000). For example, a petitioner who does not present controverted,

previously unresolved factual issues to the state court is sufficient to constitute "failure" under the plain meaning of § 2254(e)(2). *Id.* at 433. However, § 2254(e)(2) has "force [only] where § 2254(d)(1) does not bar federal habeas relief." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011). Accordingly, even if a petitioner can leap the § 2254(e)(2) hurdle, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 1400. And whatever discretion remains after *Pinholster* to hold an evidentiary hearing, it still remains appropriate to deny such a hearing if sufficient facts exist to make an informed decision on the merits. *Schriro v. Landrigan*, 550 U.S. 465, 474–75 (2007).

Additionally, pre-AEDPA precedent forecloses habeas relief if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

## II. The State Court's Denial of Relief on Morgan's Ineffective Assistance of Counsel Claims was Reasonable. (Original Claims 1-4, Supp. Claim 3)

### A. Ineffective assistance of counsel standard of review.

A defendant has the burden of establishing that he was deprived of effective assistance of counsel by a preponderance of the evidence. *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). In *Strickland v. Washington*, the

Supreme Court enunciated the familiar two-prong test for reviewing ineffective assistance of counsel claims.  466 U.S. 668, 687 (1984).

Under the first-prong of *Strickland*, a defendant must show that his trial counsel's performance was deficient. *Id.* In other words, the defendant must establish that his counsel's representation fell below an objective standard of reasonableness. *Clark*, 227 F.3d at 282. This showing requires a defendant to prove that his counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

A reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 689). Additionally, courts "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Accordingly, courts "must be highly deferential" to counsel's performance. *Id.*; *see also Strickland*, 466 U.S. at 689. Every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

Under the second-prong of the *Strickland* test, a defendant must show that his counsel's deficient performance prejudiced him. *Galvan*, 293 F.3d at 764. Thus, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Clark*, 227 F.3d at 283. "Even a deficient performance

does not result in prejudice unless that conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 687). A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland. Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Because a defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland*, 466 U.S. at 697.

Morgan has attempted to show deficient performance by second-guessing counsel's decisions, *i.e.*, that counsel might have handled things differently. As such, Morgan's claim fails to satisfy the first prong of *Strickland.* Indeed, this is precisely the type of claim disfavored by *Strickland*. 466 U.S. at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Moreover, the deference afforded to the state court's denial of Morgan's ineffective assistance of counsel claim is great. The question is not whether the state court's application of *Strickland* was incorrect, but rather was it unreasonable, a much higher standard. *Wooten v. Thaler*, 598 F.3d. 215, 222

14

(5th Cir. 2010), *citing Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). As the Supreme Court has explained, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123. Federal court review of state court decisions is thus "doubly deferential." *Id.* Morgan has not overcome this relitigation bar and, as such, his claims are without merit.

### A.  Morgan's Ineffective Assistance of Counsel Claims Lack Merit.

All of Morgan's ineffective assistance of counsel claims seem to revolve around counsel's decision not to argue that Morgan acted in self-defense, call witnesses to support that argument, and seek DNA testing to support that argument. ECF 1, at 6-7; ECF 4, at 1-3; ECF 18, at 7, 11; ECF 19, at 6-10. These claims lack merit.

It is clear that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, in assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments. *Id.* "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986) ("[s]ince Lewis has not pointed out any evidence which would have been produced by a more thorough investigation, much less evidence that would be sufficient to undermine confidence in the

outcome of trial, no prejudice has been shown."); *Alexander v. McCotter*, 775 F.2d 595, 602-03 (5th Cir. 1985).

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). The Fifth Circuit has held that "hypothetical or theoretical testimony will not justify the issuance of a writ . . . ." *See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986). Furthermore, "[w]here the only evidence of a missing witness testimony is from the defendant, this Court [Fifth Circuit] views claims of ineffective assistance with great caution." *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (citing *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985)). Finally, "[i]n order for [Petitioner] to demonstrate the requisite *Strickland* prejudice, he must show not only that the testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

With regard to Morgan's ineffective assistance of counsel claims, the state court found:

> *Ineffective Assistance of Counsel (grounds One, Two, Three, and Five)*
>
> 4.    Hon. R. Scott Walker and Hon. Brian K. Walker represented Applicant during the trial proceedings. *See* Judgment; R. Walker Affidavit, p. 1; B. Walker Affidavit, p. 1.

\*     \*     \*

9.  Hon. R. Scott Walker did not present a self-defense claim because he concluded that such a defense was contrary to the physical evidence. *See* R. Walker Affidavit, p. 1.

10. Hon. R. Scott Walker concluded that Applicant's version of events, that he used the utility knife to inflict the injuries, was inconsistent with the evidence that the injuries were inflicted by a much larger knife like a machete. *See* R. Walker Affidavit, p. 1-2; [9 RR 27-28].

11. Hon. R. Scott Walker presented evidence to the jury that Applicant's utility knife was not the cause of the victim's injury. *See* R. Walker Affidavit, p. 1-2; [8 RR 108-11].

12. Hon. R. Scott Walker advised Applicant not to testify, and develop a self-defense defense, because the testimony would negate all the testimony that Applicant's knife did not cause the victim's injuries. *See R.* Walker Affidavit, p.2.

13. Hon. R. Scott Walker's decision to not present the self-defense defense was the result of reasonable trial strategy.

14. There is no evidence that the outcome of the proceeding would have been different had counsel presented a self-defense defense. *See* Application; Memorandum.

15. Hon. R Scott Walker did not identify the 911 caller or subpoena her to testify. *See* R. Walker Affidavit, p. 2.

16. Hon. R. Scott Walker did not contact the 911 caller because, after listening to the recording several times, he concluded that her testimony would not be beneficial to the defense because the caller knew the victim, was extremely emotional, and did not come across pro-defendant. *See R.* Walker Affidavit, p.

17. Hon. R. Scott Walker's decision to not investigate the 911 caller was the result of reasonable trial strategy.

18. Both parties stipulated that the 911 caller was the sister of

the victim's girlfriend and she was not present when the victim was assaulted. [8 RR 134-35]

19. Applicant waived his right to confront and cross-examine the 911 caller. [8 RR 135]

20. There is no evidence that the 911 caller could have presented evidence beneficial to the defense. *See* Application; Memorandum.

21. There is no evidence that the outcome of the proceeding would have been different had counsel presented testimony from the 911 caller. *See* Application; Memorandum.

22. Hon. R. Scott Walker did not subpoena the arresting officer because he concluded his testimony would have been more favorable to the prosecution than the defense. *See R.* Walker Affidavit, p. 4.

23. Hon. R. Scott Walker's decision to not subpoena the arresting officer was the result of reasonable trial strategy.

24. There is no evidence that the outcome of the proceeding would have been different had counsel subpoenaed the arresting officer. *See* Application; Memorandum.

25. Hon. R. Scott Walker presented all of the pictures he believed were beneficial to the defense. *See* R. Walker Affidavit, p. 4.

26. Applicant presents no additional pictures that counsel should have presented. *See* Application; Memorandum.

27. There is no evidence that the outcome of the proceeding would have been different had counsel presented more pictures at trial. *See* Application; Memorandum.

28. Hon. R. Scott Walker did not offer the police report into evidence because it was not admissible and the prejudicial information outweighed any exculpatory information. *See R.* Walker Affidavit, p. 4.

29.   Hon. R. Scott Walker's decision to not offer the police report into evidence was the result of reasonable of trial strategy.

30.   There is no evidence that the offense report was admissible and beneficial to the defense. *See* Application; Memorandum.

31.   Applicant presents no evidence that the witnesses could have been impeached by their previous statements. *See* Application; Memorandum.

32.   There is no evidence that the outcome of the proceeding would have been different had counsel offered the police report into evidence. *See* Application; Memorandum.

33.   Hon. R. Scott Walker did not bring the fact that the victim was also cut across the stomach to the jury's attention because such information would have been more detrimental to this case than beneficial. *See R.* Walker Affidavit, p. 4.

34.   Hon. R. Scott Walker's decision to not bring to the court's attention that the victim was also cut across his stomach was the result of reasonable trial strategy.

35.   Applicant presents no evidence that the fact that the victim was also cut across the stomach was beneficial to Applicant's defense. *See* Application; Memorandum.

36.   There is no evidence that the outcome of the proceeding would have been different had counsel presented evidence that the victim was also cut across the stomach. *See* Application; Memorandum.

37.   Hon. R. Scott Walker did not subpoena Officer Salazar and ask him why DNA testing was not done because there was no reason to believe that DNA testing would exonerate Applicant. *See R.* Walker Affidavit, p. 4.

38.   Hon. R. Scott Walker concluded that testimony from Office Salazar would have been counter-productive.

39.   Hon. R. Scott Walker's decision to not subpoena Officer Salazar was the result of reasonable trial strategy.

40.   There is no evidence that the outcome of the proceeding would have been different had counsel subpoenaed Officer Salazar. *See* Application; Memorandum.

\*   \*   \*

43.   Hon. R Scott Walker advised Applicant that his best chance for getting a favorable verdict was to refrain from testifying because there was evidence before the jury that Applicant's weapon did not cause the victim's wounds. *See R.* Walker Affidavit, p. 4-5.

44.   Hon. R. Scott Walker advised Applicant that he should refrain from testifying because his version of events was contrary to the physical evidence before the jury. *See R.* Walker Affidavit, p. 5.

45.   Hon. R. Scott Walker advised Applicant that the defense would not be self-defense if he did not testify. *SeeR.* Walker Affidavit, p. 5.

46.   Hon. R. Scott Walker's chosen defense, based on the evidence before the jury, was that Applicant did not cause the victim's injuries. *See* R. Walker Affidavit, p. 5.

47.   Applicant testified that his decision to not testify was freely and voluntarily made. [8 RR 130]

48.   Hon. R. Scott Walker's advice that Applicant not testify was the result of reasonable trial strategy.

49.   There is no evidence that the outcome of the proceeding would have been different had Applicant testified. *See* Application; Memorandum.

50.   Hon. R. Scott Walker did not advise Applicant that he would be found not guilty if he did not testify. *See R.* Walker Affidavit, p. 4-5.

51.   Applicant presents no evidence to support his claim that counsel failed to investigate the offense. *See* Application; Memorandum.

52.   Applicant testified that he was "very satisfied" with counsel's preparation for trial. [8 RR 131]

53.   Applicant testified that he was "very satisfied" with counsel's representation at trial up to the defense's case. [8 RR 131]

54.   Hon. R. Scott Walker spent sixty-one hours out-of-court time preparing for this case. *See* Attachment A: Defense Claim for Fee Payment/Expenses, No. 1249395.

55.   Hon. R. Scott Walker hired an investigator to assist in locating witnesses. *See* Attachment B: Defense Claim for Fee Payment/Expenses, No. 1249395, p. 3.

56.   Hon. R. Scott Walker's investigation was the result of reasonable trial strategy.

57.   Hon. R. Scott Walker's preparation for trial was the result of reasonable trial strategy.

58.   There is no evidence that the outcome of the proceeding would have been different had counsel done more investigation. *See* Application; Memorandum.

SHCR-02, at 114-19. These factual determinations are entitled to a presumption of correctness which Morgan has failed to rebut with clear and convincing evidence. 28 U.S.C. § 2254(e); *Neal*, 239 F.3d at 696. He fails to demonstrate that there were available witnesses that would have provided favorable testimony. *See Evans*, 285 F.3d at 377. And with regard to claims that counsel should have further investigated, Morgan has not demonstrated what further investigation would have revealed, or how it would have altered

the outcome of the trial. *Green*, 882 F.2d at 1003. Rather, Morgan's claims are completely conclusory and cannot support relief. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case.").

With regard to each claim, Morgan has failed to demonstrate that counsel was deficient or that Morgan was prejudiced. The state court's denial of relief on these claims was reasonable and Morgan has not overcome the "doubly" deferential assumption in favor of the state court denial. *Richter*, 131 S. Ct. at 786. This Court should also deny relief.

## V.   The State Court Reasonably Denied Morgan's Vague  Constitutional Violation Claims. (Supp. Claims 1 and 2(c))

Morgan cites a long list of supposed constitutional violations in supplemental claims 1 and 2(c). ECF 18, at 7; ECF 19, at 1-6. These claims are nothing more than conclusory statements and cannot support relief. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v.* 691 F.2d at 799 (citations omitted). Under Rule 2(c) of the Rules Governing Section 2254 cases, a petitioner is required to plead facts in support of his claims. (West 2015). The Fifth Circuit has held "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983); *see also Miller v. Freeman*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992) ("'[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced

22

his right to a fair trial, we [can find] no merit of these [claims].'"). Accordingly, "the presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *cf. In re Vey*, 520 U.S. 303, 303 (1997) (denying petitioner *in forma pauperis* status because "[h]er various allegations are supported by nothing other than her own conclusory statements that they are true").

The state court's denial of relief on these claims was reasonable and this Court should also deny relief.

## VI. Morgan's State Habeas Error Claims Are Not Cognizable. (Supp. Claims 2(a) & 2(b))

In supplemental claims 2(a) and 2(b), Morgan complains about his state habeas proceeding. ECF 18, 7; ECF 19, at 6. However, these claims are not cognizable on federal habeas corpus review. This Court cannot grant habeas corpus relief "to correct alleged errors in state habeas proceedings." *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir.1997). "Federal habeas relief cannot be had 'absent the allegation by a petitioner that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)); *Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir.1999) ("errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief."). As a result, these claims should be dismissed with prejudice for failing to state a basis upon which relief can be granted.

## CONCLUSION

The Director respectfully requests that the petition be denied and dismissed with prejudice and that no certificate of appealability issue.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jessica Manojlovich
JESSICA MANOJLOVICH*
Assistant Attorney General
State Bar No. 24055632

*Lead Counsel

P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 936-1400
(512) 936-1280 (FAX)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading has been served by placing the same in the United States Mail, postage prepaid, on this the 29th day of June, 2016, addressed to:

Larry Joe Morgan
TDCJ-CID No. 1847262
Lynaugh Unit
1098 S Hwy 2037
Fort Stockton, TX 79735

                            s/ Jessica Manojlovich
                            JESSICA MANOJLOVICH
                            Assistant Attorney General