IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LARRY JOE MORGAN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-139-Y |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Larry Joe Morgan, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. Factual and Procedural History**

On March 22, 2013, petitioner was convicted by a jury in the 396th Judicial District Court, Tarrant County, Texas, Case No. 1249395D, of aggravated assault with a deadly weapon. (Clerk's R. 94, doc. 21-2.) Subsequently, the trial court found the repeat-offender notice in the indictment true and sentenced Petitioner to twenty years' confinement. (Id. at 7, 94.) Petitioner appealed his conviction, but his appellate counsel filed an *Ander's* brief, and

the appellate court, finding no arguable grounds, affirmed his conviction. The Texas Court of Criminal Appeals refused then Petitioner's petition for discretionary. (Mem. Op. 2, doc. 22-15; Docket Sheet 2, doc. 21-1.) Petitioner also filed a postconviction state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (Action Taken, doc. 23-2.) This is Petitioner's second federal habeas petition challenging the same conviction. The first was dismissed on exhaustion grounds. (Op. and Order 6-8, Morgan v. Stephens, No. 4:14-CV-635-Y, doc. 29.)

The evidence at trial reflected that Petitioner met Anthony Moore at Cobb Park in Fort Worth, Texas, where people often gathered to drink beer and socialize. (Reporter's R. 28, doc. 21-6.) The two bought beers from Michael Connor, who was there with his girlfriend, Terri Carrol, and a group of friends. A dispute over the beer occurred between Petitioner and Connor. Petitioner left the park but returned shortly thereafter and confronted Connor who was sitting in a lawn chair next to Carrol. Connor, who was unarmed, testified that at some point he thought Petitioner was pulling a weapon out of his pocket and he put Petitioner in a bear hug and the two went down on the ground. When Connor realized that he was being cut by Petitioner, he attempted to get up and run but his right foot had been nearly severed from his leg. He hopped

around a pickup truck in an effort to escape Petitioner, who continued to pursue him. Petitioner was then subdued by several bystanders, one of whom hit Petitioner over the head with a folding stool and one of whom admitted to pulling his own knife on Petitioner. Petitioner's industrial sheetrock knife was found at the scene. With some inconsistencies, Carrol and five other eyewitnesses testified similarly to the events. All the witnesses testified that at no time did Connor hit, kick, stab, or threaten Petitioner or act as the aggressor. The defense elicited testimony on cross-examination that the injury was likely caused by a larger weapon and presented expert testimony that, due to the nature of the injury, a heavier "instrument" such as a machete was likely used and not the sheetrock knife. Petitioner did not testify at trial, but defense counsel attempted to establish through cross-examination that Petitioner was acting in self-defense and Petitioner testified at the punishment phase that Connor's ankle was cut while Connor was "stomping" and kicking Petitioner as he sat on the ground. According to Petitioner, he was shielding his face with the knife during Connor's assault.

## II. Issues

Petitioner's claims fall within the following general categories: (1) ineffective assistance of counsel; (2) violation of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments; and (3) defects in the state-habeas proceedings. (Pet.

3

6-7, doc. 1; Am. Pet. 7-8, doc. 18.) His claims are multifarious and addressed as thoroughly as practical below.

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither time-barred nor successive but, because of the multifarious nature of Petitioner's claims, reserves the exhaustion and procedural-default defenses. (Resp't's Answer 7, doc. 27.)

## IV. LEGAL STANDARD FOR GRANTING HABEAS-CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened standard of review provided for in the AEDPA. *See* 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *See* 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1)

provides that a determination of a factual issue made by a state court shall be presumed to be correct. When the Texas Court of Criminal Appeals denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Harrington,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Schartzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez,* 274 F.3d at 948 n.11; *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

## V. Discussion

*1. Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on the first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To

establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court set out in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410

(2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of Petitioner's ineffective-assistance claims was contrary to or an objectively unreasonable application of *Strickland*. *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Petitioner claims his trial counsel was ineffective by failing to investigate; failing to assert the defense of self-defense; failing to present the police report, including the eyewitness statements, for impeachment purposes at trial; failing to present evidence that the victim was "cut across the bottom of his stomach" to counter the testimony of the state's witnesses; failing to have the 911 CD-ROMs transcribed; failing to request DNA testing or investigate whether DNA testing had been done; failing to subpoena and call eyewitnesses who were listed on the offense report; and "suppressing tangible evidence." (Pet. 6-7, doc. 1; Am. Pet. 7, doc. 18.) According to Petitioner, the following evidence was "concealed": a favorable "911 caller," a picture proving self-defense, "DNA testing," crime-scene photos showing the scene was "staged," and "911 callers of the events." (Pet. 7, doc. 1.)

Counsel, Scott Walker, responded via affidavit in the state-habeas proceedings to one or more of Petitioner's allegations as follows:

    4.    Mr. Morgan is correct that I didn't present a self-defense claim. Doing so would have been contrary to

the physical evidence, and would have been unproductive. At some point, prior to trial, Mr. Morgan told me his version of the events that he told when he testified in the punishment phase of trial. After reviewing all of the evidence the State had provided and interviewing three of the doctors that treated the victim at the hospital, I realized that Mr. Morgan's version of the events did not mesh with the physical evidence. I explained this to Mr. Morgan. I told him that there was no blood on his utility knife, which was the knife the State's witnesses would say he used to assault the victim. I also told him that all three doctors had told me that they did not believe the injuries to the victim's ankle could have been caused by the utility knife. All three doctors also told me that the injury to the victim's ankle must have been caused by a much larger knife, such as a machete. I explained to Mr. Morgan that our chances of success would be maximized by allowing the doctor or doctors to testify to their beliefs, and then rest our case. At the trial, I decided that it would be best to rest our case after the first doctor testified. His testimony was the high point in the trial for the defense. After the doctor testified, there was a break for lunch. During the break, I talked to Mr. Morgan in the holding cell. I asked my investigator, Ms. Torrez, to accompany me. We explained to Mr. Morgan that the trial had gone very well and that I believed that our chances of obtaining a not guilty verdict was very good if we rested our case at that point. I certainly did not in any way assure Mr. Morgan that he would be found not guilty. I also told Mr. Morgan that if he chose to testify to his version of events, doing so would negate everything I had done by having the doctor testify that Mr. Morgan's knife could not have caused the injury to the victim's ankle. I did everything I could to convince Mr. Morgan that he should not testify. However, I carefully explained to Mr. Morgan that the decision was totally up to him. I made it clear to him that Texas law is very clear about it being his decision to make. He decided to follow my advice and not testify. The trial judge also admonished Mr. Morgan, explaining the law very well in this regard. Again, I never assured Mr. Morgan of an acquittal if he did not testify.

5. Mr. Morgan is correct that I did not identify and subpoena a woman who made a 911 call. I was under the assumption, based on information I obtained from the prosecution, that the woman was the victim's girlfriend. I believe the prosecution was under the same assumption. I learned from the prosecution during the trial that the person was in actuality the victim's girlfriend's sister and that she had arrived shortly before she made the 911 call and did not see the altercation. During trial preparation, I listened to the 911 recording several times. I did not hear anything on the recording that made me feel that I should try to find the woman and interview her. It was clear to me that the woman on the recording knew the victim. I had no reason to believe that she was not the victim's girlfriend. Had I learned early on that she was actually the girlfriend's sister, I still would have not changed my plans for trial. I still would not have seen any reason to find her and interview her. I felt that our best strategy would be to hope the prosecution did not call her. That was because the 911 call was extremely emotional and certainly would not have been helpful to the defense.

6. I did not subpoena the arresting officer. I believed his testimony certainly would have been more favorable to the prosecution than the defense.

7. I offered all the pictures into evidence that would have been helpful to our case. I have no idea what Mr. Morgan is referring to in . . . the writ.

8. It is true that I did not offer the police report into evidence. Police reports are generally inadmissible. Also, the prejudicial information in the report certainly outweighed any possible exculpatory information.

9. It is true that I did not bring to the jury's attention that the victim was cut across the stomach, as well as the ankle. Doing so would have been much more detrimental to our case than beneficial. There would have been no benefit in making the jury believe that Mr. Morgan cut the victim's stomach, as well as his ankle.

10. It is true that I did not subpoena Officer Salazar to ask him why DNA testing was not done. Doing so would have been counter-productive. There was no reason to believe that DNA testing would have exonerated Mr. Morgan. After all, from day one, he stuck to the story that he cut the victim's ankle in self-defense.

. . .

14. It is true that Mr. Morgan told me, early on, that he had given a SIM card to Jim Shaw, his former attorney. However, he did not tell me that the SIM card contained contacts for punishment witnesses. In fact, Mr. Morgan had consistently refused to discuss the punishment phase of the trial because of his belief that he would be found not guilty. At the beginning of the punishment hearing, I asked Mr. Morgan, on the record, if this was true, and he affirmed that it was. What Mr. Morgan had told me about the SIM card was that it contained a hospital bill for his own injuries. I did not need that information because the State had given me all of Mr. Morgan's medical records. Mr. Morgan also told me that his two email accounts had pictures of his injuries taken a few weeks after the incident. I did not need the pictures because the State had given me very good pictures of the injuries which were taken at the hospital the night of the incident. Nevertheless, I attempted to gain access to the email accounts on more than one occasion. The attempts failed. At some point a week or so before trial, Mr. Morgan told me that there were reference letters as to his character contained in his email accounts. Again, I could not open the email accounts. But, again, he did not mention the character letters for the purpose of punishment evidence. He wanted to offer the letters into evidence in the guilt/innocence phase of trial. I explained to him that, even if I could retrieve the letters, they would almost certainly be inadmissible. Mr. Morgan not only did not help in planning mitigation, but he actually refused to talk about it. He refused to give me any contact information for family members or friends.

(State Habeas R. 59-62, doc. 23-18.)

Counsel and the court-appointed investigator also testified at the new-trial hearing regarding the nature and extent of the investigation conducted in the case. (Reporter's R., Hr'g on Mot. for New Trial, 10-11, 16-19, 26-29, 33-36, doc. 21-15.)

Based on the documentary record, counsel's affidavit, and his own recollection of the trial-court proceedings, the state habeas judge found defense counsel's testimony and affidavit credible and supported by the record. He then entered factual findings, too numerous to list here, refuting Petitioner's claims. (State Habeas R. 113-20, doc. 23-18.) Applying *Strickland* to the totality of counsel's representation, the state court concluded that Petitioner failed to prove that counsel was ineffective, that counsel's representation fell below objective standards of reasonableness, or that there existed a reasonable probability that, but for counsel's alleged acts of misconduct, the result of his trial would have been different. (*Id.* at 120-23.)

Petitioner fails to rebut the state court's findings of fact by clear-and-convincing evidence. See 28 U.S.C. § 2254(e)(1). Thus, the findings, including the court's credibility findings, are entitled to a presumption of correctness. *Richards v. Quarterman,* 566 F.3d 553, 563-64 (5th Cir. 2009); *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002). Applying the appropriate deference and having independently reviewed Petitioner's claims in conjunction with the state court records, it does not appear that the state

courts' application of *Strickland* was objectively unreasonable. Petitioner's claims are largely conclusory, refuted by the record, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas relief. *See Strickland,* 460 U.S. at 689 (providing strategic decisions by counsel are "virtually unchallengeable" and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses, including expert witnesses, in support of an ineffective-assistance claim); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified [to] is too uncertain"). Petitioner

has not demonstrated deficient performance or shown any reasonable probability that the outcome of his trial would have been different but for counsel's representation. A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct is strategically motivated, and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner has presented no evidentiary, factual, or legal basis in this federal habeas action that could lead the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d).

Petitioner also claims his appellate counsel was ineffective by failing to investigate; failing to present Petitioner's "laundry list of errors" and his claim that the court-appointed investigator did not investigate on his behalf in his motion for new trial; and failing to ask for a continuance so as to obtain a completed trial record.[1] (Am. Pet. 8, doc. 18.) To prevail on a claim of ineffective assistance of counsel on appeal, a petitioner must make a showing that had counsel performed differently, he would have prevailed on appeal. *Sharp v. Puckett,* 930 F.2d 450, 453 (5th Cir. 1991) (citing *Strickland,* 466 U.S. at 687)). Appellate counsel is

---

[1] It does not appear that these claims were exhausted in the state courts as required by 28 U.S.C. § 2254(b)(1)(A). Nevertheless, a court may deny a claim on the merits notwithstanding a failure to exhaust. *Id.* § 2254(b)(2).

not required to urge every possible argument, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 288 (2000); *Sharp,* 930 F.2d at 452. It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Petitioner fails to raise any meritorious claims in this petition. Prejudice does not result from appellate counsel's failure to assert meritless claims or arguments. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994). Thus, it follows that counsel was not ineffective for failing to raise one or more of Petitioner's claims in his motion for new trial and/or on appeal.

*2. Violation of Rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments*

Petitioner claims his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments were violated because of the prosecution's tampering with and fabricating physical evidence, prosecutorial misconduct, mishandling of the physical evidence, vindictiveness, "aggravated perjury," conspiracy, and collusion. (Am. Pet. 7, doc. 18.) According to Petitioner, the female assistant prosecutor initially assigned to his case was a friend of the victim and "had it out for" Petitioner and was romantically involved with the trial judge. (Pet'r's Mem. 3, doc. 19.) Petitioner further alleges that the trial judge engaged in "court overreach" by allowing "changes in the pretrial transcripts" in favor of the prosecution and that the judge was biased against

14

Petitioner based upon several comments he made. (Id. at 4-5.) However, absent evidence in the record, a court cannot consider such bald assertions, unsupported and unsubstantiated by anything else in the record, to be of probative evidentiary value. *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983).

Petitioner also asserts that his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments were violated "in the manner in which the state conducted their finding of fact and conclusion of law which rendered the results in error." (Id. at 6.) However, alleged defects in state habeas proceedings are not a basis for federal habeas relief. *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). Further, a paper hearing is sufficient to afford a petitioner a full and fair hearing, especially where, as here, the trial judge and the state habeas judge are one and the same. *Murphy v. Johnson,* 205 F.3d 809, 816 (5th Cir. 2000).

*C. Evidentiary Hearing/Expansion of the Record*

Petitioner seeks an evidentiary hearing and/or expansion of the record for purposes of further developing the record in support of his claims. *See* 28 U.S.C. § 2254(e)(2); Rules Governing Section 2254 Cases 7. However, review under § 2254(d)(1) is generally limited to the record that was before the state court that adjudicated the claim(s) on the merits. *Cullen v. Pinholster,* 563 U.S. 170, 181-82 (2011). Further, § 2254(e)(2) provides:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
>> (A) the claim relies on–
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.*

Petitioner has not met the statutory criteria and further development of the record is not necessary in order to assess the claims.

### VI. Conclusion

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, a certificate of appealability will not be issued. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists

16

would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of his constitutional claims. Therefore, a certificate of appealability should not issue.

SIGNED November 28, 2017.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE